UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GARY T. WONG and MARIA WONG

      Plaintiffs,

    v.

AMERICAN SERVICING COMPANY,
INC., LITTON LOAN SERVICING,
MERIDIAS CAPITAL, INC., FIRST
AMERICAN LOANSTAR TRUSTEE
SERVICES, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
MERIDIAS CAPITAL INC. WILLIAM
A. ARRIOLA, BRENT HICKS and
DOES 1-20 inclusive,

      Defendants.
_____/

NO. 2:09-CV-01506 FCD/DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the motions of Meridias
Capital, Inc. ("Meridias"), Brent Hicks ("Hicks"), American
Servicing Company, Inc. ("American Servicing"), Mortgage
Electronic Registration Systems, Inc. ("MERS"), and First
American Loanstar Trustee Services ("Loanstar") to dismiss
plaintiffs' First Amended Complaint pursuant to Federal Rule of

1

Civil Procedure ("FRCP") 12(b)(6).  Plaintiffs Gary T. Wong and

Maria Wong (collectively, "plaintiffs") oppose the motions.  For

the reasons set forth below, defendants' motions are GRANTED in

part and DENIED in part.[1]

**BACKGROUND**

Plaintiffs brought this action against American Servicing,

Litton Loan Servicing ("Litton"), Loanstar, MERS, Meridias,

William A. Arriola ("Arriola"), and Hicks for conduct arising out

of a loan and subsequent foreclosure activity.  (Pls.' First

Amended Complaint ("Compl."), filed Aug. 4, 2009, ¶ 17.)

Plaintiffs allege that on or about April 20, 2006, Hicks, who

held himself out as a loan officer employed by Meridias,

solicited plaintiffs to refinance their residence.  (Id. ¶ 23.)

During the loan application process, plaintiffs allege that

Hicks told plaintiffs that he could get them the "best deal" and

the "best interest rates" available on the market.  (Id. ¶ 25.)

Plaintiffs allege that Hicks intentionally falsified their income

on the loan application, stating that plaintiffs' combined income

was $20,599.00 per month, when their net income was approximately

$10,000.00 per month.  (Id. ¶ 26.)

Plaintiffs claim that Hicks advised them that they would

receive $100,000.00 if they closed the loan, but at closing Hicks

informed them that the underwriting department had made a

mistake, and plaintiffs would actually not receive the discount.

---

[1]     Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. L.R. 78-230(h).

1  (Id. ¶ 24.)[2]   Hicks allegedly advised plaintiffs that he could

2  acquire a fixed rate loan, and based in part on plaintiffs'

3  reliance upon this assertion, he sold plaintiffs two loans for

4  the purchase of their residence totaling $625,796.00.  (Id. ¶

5  25.)  Plaintiffs allege that the first loan included a 7.875%

6  variable rate with a payment of $4,106.79 and the second loan

7  included a 12.5% variable rate with a payment of $1,669.71.  (Id.

8  ¶ 26.)  Plaintiffs further allege that Hicks advised them that if

9  the loan ever became unaffordable, he would simply refinance it

10 into an affordable loan.  (Id. ¶ 27.)

11     Prior to closing, plaintiffs allege that they were not given

12 a copy of any of the loan documents as required. (Id. ¶ 28.)

13 At the closing, plaintiffs allege that they had a few minutes to

14 sign the documents, that they were not allowed to review any

15 documents, and that they did not receive the required copies of a

16 proper notice of cancellation.  (Id.)

17     On or about June 1, 2006, plaintiffs completed the loan

18 transaction.  The terms of the loan were included in a promissory

19 note, secured by a deed of trust on the property, which

20 identified Loanstar as the trustee and Meridias as the lender.

21 (Id. ¶ 30.)  Plaintiff claims that MERS was also the named

22 nominee and beneficiary.  (Id. ¶ 31.)  Plaintiffs allege that

23 when the loan was completed, they did not receive "the required

24 documents and disclosures, including, but not limited to the TILA

25 disclosure and the required number of copies of the Notice of

26

27          [2]     The court notes the paragraph numbering in the
   complaint is incorrect and paragraphs 24, 25, and 26 are repeated
28 twice.  However, the court refers to the paragraph numbers as
   they are listed in plaintiffs' complaint.

Right to Cancel." (Id. ¶ 39.)

On or about March 31, 2009, plaintiffs allegedly sent a Qualified Written Request to defendant American Servicing pursuant to the Real Estate Settlement Procedures Act ("RESPA"), which demanded rescission of the loan pursuant to the provisions of the Truth in Lending Act ("TILA"). (Id. ¶ 32.) Plaintiffs allege that American Servicing has not responded to the QWR. (Id.) On or about July 18, 2008, Loanstar filed a Notice of Default ("Notice") in Placer County, and on or about August 29, 2008, plaintiffs received a Notice of Trustee Sale. (Id. ¶¶ 42, 43.)

In their First Amended Complaint, plaintiffs assert claims for 1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.,; 2) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), 3) negligence, 4) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 1788 et seq., 5) breach of fiduciary duty, 6) fraud, 7) violations of California Business and Professions Code § 17200; 8) breach of contract, 9) breach of implied covenant of good faith and fair dealing, and 10) wrongful foreclosure. (Compl.)

**STANDARDS**

**A.   Motion To Dismiss For Failure To State A Cognizable Claim**

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic

4

1  v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations

2  omitted).  "This simplified notice pleading standard relies on

3  liberal discovery rules and summary judgment motions to define

4  disputed facts and issues and to dispose of unmeritorious

5  claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

6      On a motion to dismiss, the factual allegations of the

7  complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319,

8  322 (1972).  The court is bound to give plaintiff the benefit of

9  every reasonable inference to be drawn from the "well-pleaded"

10 allegations of the complaint.  Retail Clerks Int'l Ass'n v.

11 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not

12 allege "'specific facts' beyond those necessary to state his

13 claim and the grounds showing entitlement to relief."  Twombley,

14 550 U.S. at 570.  "A claim has facial plausibility when the

15 plaintiff pleads factual content that allows the court to draw

16 the reasonable inference that the defendant is liable for the

17 misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

18     Nevertheless, the court "need not assume the truth of legal

19 conclusions cast in the form of factual allegations."  United

20 States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

21 Cir. 1986).  While Rule 8(a) does not require detailed factual

22 allegations, "it demands more than an unadorned, the defendant-

23 unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at 1949.  A

24 pleading is insufficient if it offers mere "labels and

25 conclusions" or "a formulaic recitation of the elements of a

26 cause of action."  Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at

27 1950 ("Threadbare recitals of the elements of a cause of action,

28 supported by mere conclusory statements, do not suffice.").

5

Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

**B.    Motion For A More Definite Statement**

A motion for a more definite statement should not be granted unless a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). This liberal standard is consistent with FRCP 8(a)(2) which allows pleading that contains a "short and plain statement of the claim." See Hutson v. Am. Home Mortg. Servicing, 2009 U.S. Dist. LEXIS 96764, at *9 (N.D. Cal. Oct. 16, 2009) ("A motion for a more definite statement attacks intelligibility, not simply lack of detail."). The Federal Rules

of Civil Procedure anticipate that the parties will familiarize
themselves with the claims and ultimate facts through the
discovery process.  See Famolare, Inc. v. Edison Brothers Stores,
Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).  Indeed, "where the
information sought by the moving party is available and/or
properly sought through discovery, the motion should be denied."
Id.  However, a plaintiff must not be permitted to use "shotgun"
pleading tactics, such as providing inadequate factual bases for
his claims, to thwart the defendant's ability to seek dismissal
of the claims against him as early in the litigation as possible.
See Marx v. Gumbinner, 855 F.2d 783, 792 (11th Cir. 1988).

**ANALYSIS**

**A.   TILA**

Plaintiffs' first claim for relief alleges that defendant
Meridias violated TILA by failing to provide the required
disclosures to plaintiff at the time of closing and failing to
give clear and conspicuous disclosures.  (Compl. ¶ 59.)  Meridias
moves to dismiss the count on grounds that the claim for damages
is time-barred by the one-year statute of limitation.[3]  (Def.'s
Mot. to Dismiss ("MTD", filed Aug. 24, 2009, 4:3-5:22.)
Plaintiff argues that equitable tolling should be applied to
suspend the statute of limitations (Pl.'s Opp'n Mot. Dismiss
("Pl.'s Opp'n"), filed Sept. 30, 2009, 8:11-22.)

---

[3]     Defendant also argues that plaintiffs' claim for
rescission fails because rescission is not available for a
residential mortgage transaction.  Plaintiffs concede that
rescission is not an available remedy under TILA for a
residential mortgage transaction and withdraw the rescission
portion of their TILA claim. (Pls.' Opp'n, filed Sept. 30, 2009,
p. 8, FN: 4)

TILA violations include the failure to provide the required disclosures pursuant to 15 U.S.C. § 1631 and the failure to clearly and conspicuously disclose information relating to the "annual percentage rate" and the "finance charge" pursuant to 15 U.S.C. § 1632.  To recover damages arising from alleged TILA violations, a plaintiff must file an action to recover damages "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  However, in certain circumstances, equitable tolling of civil damages claims brought under TILA might be appropriate.  See King v. State of California, 784 F.2d 910, 915 (9th Cir. 1986).  The doctrine of equitable tolling may be appropriate when the imposition of the statute of limitations would be unjust or would frustrate TILA's purpose "to assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uninformed use of credit."  Id. (quoting 15 U.S.C. § 1601(a)).  District courts, therefore, have the discretion to evaluate specific claims of equitable tolling and adjust the limitations period accordingly when the borrower may not have reasonable opportunity to discover the fraud or nondisclosures that give rise to a TILA action.  Id.

In this case, Meridias contends, and plaintiffs do not dispute, that the alleged TILA violations occurred no later than June 1, 2006, the date plaintiffs entered into the loan agreement with defendant.  (MTD 4:9-11.)  Accordingly as plaintiffs did not bring the claim until June 1, 2009, more than one year has elapsed since the alleged TILA violations.  Plaintiffs argue that equitable tolling may apply to their TILA claim because it is based upon defendants' alleged failure to clearly and

8

conspicuously disclose various terms of the loan. (Compl. at ¶¶ 39, 40.)  However, plaintiffs plead no other facts to explain how defendants concealed the true facts or why plaintiff could not otherwise have discovered the TILA violations at the consummation of her loan.  "Such factual underpinnings are all the more important . . . since the vast majority of [p]laintiffs'] alleged violations under TILA are violations that are self-apparent at the consummation of the transaction."  <u>Cervantes v. Countrywide Home Loans, Inc.</u>, 2009 U.S. Dist. LEXIS 87997, at ** 13-14 (D. Ariz. Sept. 23, 2009) (holding that equitable tolling was not appropriate when plaintiffs simply alleged that defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure").

Accordingly, defendant Meridias' motion to dismiss plaintiffs' claim for civil damages based on violation of TILA is GRANTED.

**B.   California Rosenthal Act**

Plaintiffs' second claim for relief alleges that defendant American Servicing[4] violated the California Rosenthal Act ("RFDCPA").  Specifically, plaintiffs claim that defendant threatened to take actions not permitted by law, including but not limited to: collecting on a debt not owed; making false reports to credit reporting agencies; foreclosing upon a void security interest; foreclosing upon a note of which they were not in possession nor otherwise entitled to payment; falsely stating

---

[4]    Plaintiffs voluntarily dismissed all claims against Litton.  (Docket #32.)  Thus the court only addresses the Rosenthal claim as it is pertains to American Servicing.

the amount of a debt; increasing the amount of a debt by
including amounts that are not permitted by law or contract; and
using unfair and unconscionable means in an attempt to collect a
debt.  (Compl. at ¶ 69.)  Defendant American Servicing argues
that plaintiff has failed to state a claim pursuant to the
RFDCPA.

The purpose of the RFDCPA is "to prohibit debt collectors
from engaging in unfair or deceptive acts or practices in the
collection of consumer debts and to require debtors to act fairly
in entering into and honoring such debts."  Cal. Civ. Code §
1788.1(b).  Under the RFDCPA, a "debt collector" is defined as
"any person who, in the ordinary course of business, regularly,
on behalf of himself or herself or others, engages in debt
collection."  (Cal. Civ. Code. § 1788.2(c)).  A debt collector
violates the act when it engages in harassment, threats, the use
of profane language, false simulation of the judicial process, or
when it cloaks its true nature as a licensed collection agency in
an effort to collect a debt.  See Cal. Civ. Code §§ 1788.10-
88.18; see also Hernandez v. Cal. Reconveyance Co., 2009 U.S.
Dist. LEXIS 13936, at * 13 (E.D. Cal. Feb. 23, 2009) (holding
that a RFDCPA claim failed because the complaint lacked
allegations of harassment or abuse, false or misleading
representations of the debt collector's identity, or unfair
practices during the process of collecting debt).

The RFDCPA is not applicable until after a loan is made and
does not constitute a lending regulation.  See Alkan v.
Citimortgage, Inc., 336 F. Supp. 2d 1061, 1064 (N.D. Cal. 2004).
Moreover, foreclosing on a deed of trust does not, by itself,

10

implicate the RFDCPA.  See e.g. Benham v. Aurora Loan Servs.,
2009 U.S. Dist. LEXIS 78384, at *6 (N.D. Cal. Sept. 1, 2009)
(dismissing plaintiff's complaint "because foreclosing on a
property pursuant to a deed of trust is not the collection of a
debt within the meaning of the RFDCPA"); Ricon v. Recontrust Co.,
2009 U.S. Dist. LEXIS 67807, at *9 (S.D. Cal. Aug. 4, 2009);
Hepler v. Wash. Mut. Bank, F.A., 2009 U.S. Dist. LEXIS 33883, at
*11 (C.D. Cal. April 17, 2009).

     Plaintiffs' complaint fails to allege any facts that
demonstrate how American Servicing violated the RFDCPA.  Rosal v.
First Fed. Bank of Cal., 2009 U.S. Dist. Lexis 60400 (N.D. Cal.
July 15, 2009) (dismissing the plaintiff's complaint where it did
not allege facts giving rise to the inference that any of the
defendants is a debt collector as defined by the RFDCPA nor
assert what provisions of the RFDCPA defendants allegedly
violated).  Plaintiffs do not allege that defendants used
threats, harassment, or profane language to collect a debt after
the loan was made.  Further, plaintiffs fail to identify who
among defendants acted as a debt collector pursuant to the
RFDCPA.  See Fuentes v. Deutsche Bank, 2009 U.S. Dist. LEXIS
57931 (S.D. Cal. July 8, 2009) (granting defendant's motion for
judgment "[s]ince a residential mortgage is not a debt and a home
foreclosure is not debt collection within the meaning of the
statute"); Gamboa v. Trustee Corps, 2009 WL 656285 (N.D. Cal.
March 12, 2009) ("[T]he law is clear that foreclosing on a
property pursuant to a deed of trust is not a debt collection
within the meaning of the RFDCPA.").
/////

1    Accordingly, American Servicing's motion to dismiss
2    plaintiffs' second claim for violation of RFDCPA is GRANTED.

3    **C.   Negligence**

4    Plaintiffs' third claim for relief alleges that all
5    defendants were negligent in directing plaintiffs into a loan
6    that they may not have qualified for by industry stanrdards,
7    resulting in unnecessarily increased fees, which defendants knew
8    were in excess of what plaintiffs could afford. (Compl. at ¶
9    75.) Further, plaintiffs allege that defendants failed to
10   maintain the original mortgage note and to make the statutorily
11   required disclosures to plaintiffs. (<u>Id.</u> ¶ 76.) Defendants
12   contend that plaintiffs' claim fails because the plaintiffs have
13   failed to plead sufficient facts supporting a duty owed to them
14   by defendants.

15   The elements of a cause of action for negligence are (1) a
16   legal duty to use reasonable care, (2) breach of that duty, and
17   (3) proximate [or legal] cause between the breach and (4) the
18   plaintiff's injury." <u>Mendoza v. City of Los Angeles</u>, 66 Cal.
19   App. 4th 1333, 1339 (1998). "The question of the existence of a
20   legal duty of care . . . presents a question of law which is to
21   be determined by the courts alone." <u>First Interstate Bank of</u>
22   <u>Ariz., N.A. v. Murphy, Weir & Butler</u>, 210 F.3d 983, 987 (9th Cir.
23   2000). "Absent the existence of duty . . . , there can be no
24   breach and no negligence." <u>Nichols v. Keller</u>, 15 Cal. App. 4th
25   1672, 1683 (1993); <u>Nymark v. Heart Fed. Savings & Loan Assn.</u>, 231
26   Cal. App. 3d 1089, 1096 (3d Dist. 1991) ("The existence of a duty
27   of care owed by a defendant to a plaintiff is a prerequisite to
28   establishing a claim for negligence.") (citations omitted).

12

"Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, except those imposed due to special circumstance." Resolution Trust Corp. v. BVS Dev., 42 F.3d 1206, 1214 (9th Cir. 1994) (citing Nymark, 231 Cal. App. 3d at 1096 (1991)); see also Cataulin v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 59708, at *6 (S.D. Cal. July 13, 2009); Spencer v. DHI Mortgage Co., 2009 U.S. Dist. LEXIS 55191, at *8 (E.D. Cal. June 30, 2009); Mangindin v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 51231, at *21 (N.D. Cal. June 17, 2009); Watts v. Decision One Mortg. Co., 2009 WL 2044595, * 3 (S.D. Cal. July 13, 2009) (holding that a loan servicer owed no duty of care to the plaintiffs).   Special circumstances arise when a lender actively participates in the financed enterprise.   See Nymark, 231 Cal. App. 3d at 1096; Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise beyond the domain of the usual money lender.")   A lender may also be secondarily liable through the actions of a mortgage broker, who has a fiduciary duty to its borrower-client, if there is an agency relationship between the lender and the broker.   See Plata v. Long Beach Mortg. Co., 2005 U.S. Dist. LEXIS 38807, at *23 (N.D. Cal. Dec. 13, 2005).   Further, the trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of

trust." <u>Cisneros v. Instant Capital Funding Group, Inc.</u>, 2009
U.S. Dist. LEXIS 91999 (E.D. Cal. Sept. 18, 2009) (citing <u>Vournas</u>
<u>v. Fidelity National Title Ins. Co.</u>, 73 Cal. App.4th 668, 677
(1999).

Plaintiffs fail to allege any facts that as a lender,
Meridias or Hicks actively participated in the financed
enterprise beyond their capacities as lender and lending agent.
Similarly, plaintiffs cite no facts or authority to support their
position that American Servicing or MERS owed them a duty of care
in their respective capacities as servicer and nominee on the
trust.  Rather, in their complaint, plaintiffs describe nothing
more than an arms-length loan transaction between defendants and
themselves.  Plaintiffs also do not allege that defendants
actively participated in the financed enterprise beyond the usual
practices associated with the lending business.  As such, under
the facts pled in the complaint, defendants owed plaintiffs no
duty of care.  Therefore, defendants' motions to dismiss
plaintiffs' negligence claim is GRANTED.

**D.   RESPA Violation**

The fourth claim for relief alleges that American Servicing
violated 12 U.S.C. § 2605 by failing to provide a written
explanation in response to plaintiffs' Qualified Written Request
("QWR").  (Compl. ¶ 84.)  Plaintiffs also generally allege that
American Servicing engaged in a pattern or practice of non-
compliance with 12 U.S.C. § 2605.  (<u>Id.</u> ¶ 85.)  American
Servicing moves to dismiss this claim on grounds that the
allegations reflect that the QWR does not challenge the accuracy
of the account or information regarding servicing of the loan and

14

1  thus, does not meet the description in Section 2605(e)(1).

2  Defendant also contends that plaintiffs fail to allege that

3  American Servicing was a loan servicer pursuant to § 2605(e)(2).

4  (Def.'s Br. in Supp. of Mot. to Dismiss, filed Sept. 3, 2009,

5  5:1-7.)

6      Section 2605 requires a loan servicer to provide disclosures

7  relating to the assignment, sale, or transfer of loan servicing

8  to a potential or actual borrower: (1) at the time of the loan

9  application, and (2) at the time of transfer.  12 U.S.C. § 2605.

10  The loan servicer also has a duty to respond to a borrower's

11  inquiry or "qualified written request."  12 U.S.C. § 2605(e).  A

12  qualified written request is a written correspondence that

13  enables the servicer to identify the name and account of the

14  borrower.  12 U.S.C. § 2605(e)(1).  It also either includes a

15  statement describing why the borrower believes that the account

16  is in error or provides sufficient detail to the servicer

17  regarding other information sought by the borrower.  Id.  The

18  loan servicer is required to respond by making appropriate

19  corrections to the borrower's account, if necessary and, after

20  conducting an investigation, providing the borrower with a

21  written clarification or explanation.  12 U.S.C. § 2605(e)(2).

22  Pursuant to § 2605(I), "'servicing' means receiving any scheduled

23  periodic payments from a borrower . . . and making the payments

24  of principal and interest and such other payments with respect to

25  the amounts received from the borrower."

26      Plaintiffs allege that on March 31, 2009, they mailed a QWR

27  to defendant American Servicing, which included a demand to

28  rescind the loan pursuant to TILA.  (FAC at ¶ 32.)  According to

15

the allegations in the complaint, the March 31, 2009 letter

"simply disputed the validity of the loan and not its servicing."

Consumer Solutions REO, LLC v. Hillery, -- F. Supp. 2d --, 2009

WL 2711264 (Aug. 26, 2009 N.D. Cal. 2009); see MorEquity, Inc. V.

Naeem, 118 F. Supp. 2d 885, 900-01 (N.D. Ill.200) (noting that

the "[t]he counterclaim alleges [that the request alleged] a

forged deed, and irregularities with respect to the recording of

the two loans, but [made] no claim with respect to improper

servicing" and therefore, dismissing claim pursuant to §

2605(e)).  While plaintiffs assert that American Servicing

engaged in a pattern or practice of non-compliance with the

requirements of the mortgage servicer provisions of RESPA as set

forth in 12 U.S.C. § 2605 separate and apart from responding to

the proffered QWR, the complaint contains only conclusory

allegations unsupported by any relevant factual assertions.

Accordingly, American Servicing's motion to dismiss

plaintiffs' fourth claim for relief for violations of RESPA is

GRANTED.[5]

**E.   Breach of Fiduciary Duty**

Plaintiffs' fifth claim for relief alleges that defendants

Meridias, Hicks, and Arriola breached their fiduciary duties by

allegedly obtaining a loan with unfavorable terms, failing to

disclose the negative consequences of the loan, and securing a

secret profit by failing to comply with TILA, RESPA and engaging

in unfair business practices.  (Compl. ¶ 95.)  Defendants

---

[5]    Because the court concludes that plaintiffs' complaint
fails to state a clam under RESPA, it does not reach the issue of
whether American Servicing is a "loan servicer" for the purposes
of Section 2605(e)(2).

Meridias and Hicks move to dismiss the claim on the basis that a lending institution does not owe a fiduciary duty to a borrower.

In order to sustain a claim for breach of a fiduciary duty, "a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." Serrano v. Sec. Nat'l Mortg. Co., 2009 U.S. Dist. LEXIS 71725 (S.D. Cal. Aug. 14, 2009) (citing Shopoff & Cavallo LLP v. Hyon, 167 Cal. App. 4th 1489, 85 Cal. Rptr.3d 268, 285 (Cal. Ct. App. 2008). "Absent special circumstances, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." Rangel v. DHI Mortgage Co., Ltd., 2009 U.S. Dist. LEXIS 65674, at *8 (E.D. Cal. July 20, 2009); see also e.g. Tasaranta v. Homecomings Fin., 2009 U.S. Dist. LEXIS 87372, at *15 (S.D. Cal. Sept. 21, 2009); Brittain v. IndyMac Bank, FSB, 2009 U.S. Dist. LEXIS 84863, at * 14 (N.D. Cal. Sept. 16, 2009); Dinsmore-Thomas v. Ameriprise Fin., Inc., 2009 U.S. Dist. LEXIS 68882, at *29 (C.D. Cal. Aug. 3, 2009); Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn. 52 Cal. App. 3d 484, 488, 489 (1st Dist. 1975); Bradler v. Craig, 274 Cal. App. 2d 466, 473, 476 (2d Dist. 1969).

Because, as set forth above in the analysis of their claim for negligence, plaintiffs have failed to allege any facts that would give rise to a fiduciary relationship between themselves and defendants, Meridias and Hicks' joint motion to dismiss plaintiffs' claim for breach of fiduciary duty is GRANTED.

**F.    Fraud**

Plaintiffs' sixth claim for relief alleges that all defendants committed fraud by making false material

representations to plaintiffs.  Specifically, plaintiffs assert
that defendant Hicks intentionally and falsely represented to
plaintiffs that their loan would have a fixed interest rate and
that he could get them the "best interest rates."  (Compl. ¶ 25.)
Plaintiffs also claim that they were misled into an unaffordable
loan after Hicks intentionally falsified their income on the loan
application form.  Plaintiffs claim that they relied upon such
representations in purchasing the property, but that on or about
July 18, 2008, defendants caused a Notice of Default to be issued
and recorded and executed a foreclosure.  Defendants move to
dismiss plaintiff's fraud claim for failure to satisfy Rule
9(b)'s heightened pleading requirements.

Under California law, the elements of common law fraud are
"misrepresentation, knowledge of its falsity, intent to defraud,
justifiable reliance, and resulting damages."  Gil v. Bank of
Am., Nat'l Ass'n, 138 Cal. App. 4th 1371, 1381 (2006).  A court
may dismiss a claim grounded in fraud when its allegations fail
to satisfy Rule 9(b)'s heightened pleading requirements.  Vess v.
Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).
Therefore, plaintiff "must state with particularity the
circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  In
other words, the plaintiff must include "the who, what, when,
where, and how" of the fraud.  Id. at 1106 (citations omitted).
"The plaintiff must set forth what is false or misleading about a
statement, and why it is false."  Decker v. Glenfed, Inc., 42
F.3d 1541, 1548 (9th Cir. 1994).  The purpose of Rule 9(b) is to
ensure that defendants accused of the conduct specified have
adequate notice of what they are alleged to have done, so that

18

they may defend against the accusations.  Concha v. London, 62
F.3d 1493, 1502 (9th Cir. 1995).  "Without such specificity,
defendants in these cases would be put to an unfair advantage,
since at the early stages of the proceedings they could do no
more than generally deny any wrongdoing."  Id. (citing Semegen v.
Weidner, 780 F.2d 727, 731 (9th Cir. 1985)).

Furthermore, "Rule 9(b) does not allow a complaint to merely
lump multiple defendants together but require[s] plaintiffs to
differentiate their allegations when suing more than one
defendant . . . and inform each defendant separately of the
allegations surrounding his alleged participation in the fraud."
Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007).  When
asserting a fraud claim against a corporation, "the plaintiff's
burden . . . is even greater. . . . The plaintiff must 'allege
the names of the persons who made the allegedly fraudulent
representations, their authority to speak, to whom they spoke,
what they said or wrote, and when it was said or written.'"
Lazar v. Superior Court, 12 Cal. 4th 631, 645 (1996) (quoting
Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153,
157 (1991)); see also Edejer, 2009 U.S. Dist. LEXIS 52900 at *36
(dismissing the fraud claim where the plaintiff did not allege
any misrepresentation or false statements made by the defendants;
did not allege the names of the persons who made the allegedly
fraudulent representations and their authority to speak; and did
not allege with sufficient particularity or clarity what was
false or misleading about the statements); Mohammad Akhavein v.
Argent Mortgage Co., 2009 U.S. Dist. LEXIS 61796, at *10 (N.D.
Cal. July 17, 2009); Spencer v. DHI Mortgage Co., 2009 U.S. Dist.

19

LEXIS 55191, at *18 (E.D. Cal. June 30, 2009) (dismissing the plaintiff's fraud claim without leave to amend because it failed to satisfy Rule 9(b)'s "'who, what, when, where and how' requirements" and was so deficient as to "suggest no potential improvement from an attempt to amend").

In this case, plaintiffs have sufficiently alleged a claim for fraud against defendants Hicks and Meridias.  Plaintiffs allege that defendant Hicks induced plaintiffs to agree to an unaffordable loan by intentionally falsifying their income on the loan application.  Plaintiffs also allege, that Hicks was a loan agent acting on defendant Meridias' behalf and that Meridias endorsed its agent's fraudulent behavior.  As such, plaintiffs have given defendants Hicks and Meridias sufficient notice of the basis for their fraud claim.

However, plaintiff fails to allege what false statements were made by the remaining moving defendants, when such statements were made, or who among the defendants made such statements.  The conclusory allegations of fraud against these defendants are insufficient to meet Rule 9(b)'s heightened pleading standards.

Accordingly, Meridias and Hicks' motion to dismiss plaintiffs' sixth claim for fraud is DENIED, and the remaining moving parties' motion to dismiss plaintiffs' fraud claim is GRANTED.

## G.    Breach of Contract

Plaintiffs' eighth claim for relief alleges breach of contract against defendants Hicks, Arriola, and Meridias. Meridias and Hicks argue that plaintiffs' claims must be

dismissed for failure to state a claim upon which relief may be granted.

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008). "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." Monaco v. Bear Stearns Residential Mortgage Corp., -- F. Supp. 2d --, No. CV 07-05607 SJO (CTX), 2008 WL 867727, at *5 (C.D. Cal. 2008). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." Id. (citing Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 855 P.2d 1263, 1271 (Cal.1993)). "[T]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

With respect to an oral contract to restructure the terms of a loan, the agreement must embody definite terms, capable of enforcement, in order to constitute a legal contract. Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 483 (1st Dist. 1989) (noting that "the terms of a restructuring agreement obviously may vary as widely as the terms of the original agreement"). "Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid, subsisting agreement." Id. (quoting Kruse v. Bank of Am., 202 Cal. App. 3d 38, 59 (1st Dist. 1988)). Moreover, the mere "understanding"

21

1  that a loan or mortgage would be restructured is insufficient to

2  state a claim for breach of contract.   Id.

3      Plaintiffs do not allege ambiguity within the terms of the

4  contract, but rather that defendants wrongfully induced

5  plaintiffs to enter into a contract with unfair terms and failed

6  to provide adequate assistance during the formation of the

7  contract.  Specifically, plaintiffs allege that Meridias breached

8  its contract when it mislead plaintiff as to the type of loan and

9  the monthly payments.  However, plaintiffs fail to identify any

10  contract that obligated defendants to conduct themselves in a

11  particular manner with respect to these allegations.

12      Plaintiffs also allege that defendant Hicks promised to

13  refinance plaintiffs' loan to a lower rate when the loan became

14  unaffordable.  Plaintiffs contend that defendant Meridias

15  breached this contract by failing to refinance the loan.

16  However, because these general allegations fail to set forth any

17  facts alleging a valid, enforceable contract under California

18  law, plaintiffs have failed to state a viable claim for breach of

19  such a contract.

20      Accordingly, defendants Meridias and Hicks' motion to

21  dismiss plaintiffs' eighth claim for relief for breach of

22  contract is GRANTED.

23  **H.    Breach of Implied Covenant of Good Faith and Fair Dealing**

24      Plaintiffs' ninth claim for relief asserts that Meridias,

25  Hicks, and Arriola breached the implied covenant of good faith

26  and fair dealing.  Plaintiffs specifically allege that defendants

27  collectively breach the implied covenant of good faith when they:

28  (1) failed to put as much consideration to plaintiffs' interest

as their own interests; (2) failed to disclose the true nature of the loan; (3) failed to give plaintiffs the requisite notice and disclosures.  (FAC at ¶ 120.)

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." Smith v. City & County of San Francisco, 225 Cal. App. 3d 38, 49 (1990).  "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." Fortaleza v. PNC Fin. Servs. Group, Inc., 2009 U.S. Dist. LEXIS 64624, at **15-16 (N.D. Cal. July 27, 2009).  Furthermore, "a breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990).  The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." Pasadena Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1093-1094 (2004).  "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." Wolf v. Walt Disney Pictures and Television, 162 Cal. App. 4th 1107, 1120 (2008).

As set forth above, plaintiffs fail to plead facts that identify the existence of a valid contract between plaintiffs and

named defendants.  As this claim is a derivative of a breach of contract claim, plaintiffs' failure to allege the existence of a contract between plaintiffs and each of the defendants is fatal to the claim.

Accordingly, defendants Hicks and Meridias' motion to dismiss plaintiffs' claim for breach of implied covenant of good faith and fair dealing is GRANTED.

**I.    Wrongful Foreclosure**

Plaintiffs' tenth claim for relief alleges a wrongful foreclosure claim against defendants American Servicing, Litton, and Loanstar predicated on violations of Section 2923.5 of the California Civil Code and Section 3301 of the California Commercial Code.  (FAC at ¶¶ 127, 129.)  Defendants contend that plaintiffs' wrongful foreclosure claim fails primarily because plaintiff has not alleged ability to tender the borrowed funds to the lender.

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112,117 (Cal. App. 2d Dist. 1971).  The overwhelming majority of California district courts utilize the Karlsen rationale in examining wrongful foreclosure claims.  Anaya v. Advisors Lending Group, 2009 U.S. Dist. LEXIS 68373 (E.D. Cal. August 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 U.S. Dist. LEXIS 60813 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has

taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); <u>Montoya v. Countrywide Bank</u>, 2009 U.S. Dist. LEXIS 53920 (N.D. Cal. June 25, 2009) ("Under California law, the "tender rule" requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt").  The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property."  <u>Williams v. Countrywide Home Loans</u>, 1999 U.S. Dist. LEXIS 14550 (N.D. Cal. Sept. 15, 1999).

As set forth above, plaintiffs have not alleged any facts supporting their ability to tender any payment.  In response to defendants' assertions that they lack the ability to tender payment, plaintiffs contend that more discovery is needed before plaintiff knows how much to tender.  (Pl's. Opp'n to American Servicing's Mot. to Dismiss, filed Sept. 30, 2009, 25:13-15.) However, the Notice of Default and Election to Sell Under Deed of Trust provides that the amount of unpaid debt together was $70,141.24.76.  (Ex. 5 to Def.'s Request for Judicial Notice.) Further, plaintiff fails to set forth any facts demonstrating an immediate ability or willingness to tender payment.

/////

/////

/////

/////

1    Accordingly, defendants' motions to dismiss plaintiffs'

2    tenth cause of action for wrongful disclosure is GRANTED.[6]

3    **J.    Violation of California Business & Professions Code ¶ 17200**

4    The seventh claim asserts that all defendants violated

5    Section 17200 of the California Business & Professions Code by

6    engaging in unlawful, unfair, and fraudulent business practices.

7    (Compl. ¶ 107.)  Defendants argue that plaintiffs fail to state a

8    claim as they merely rely upon conclusory assertions of unlawful,

9    unfair, and fraudulent business practices and base their claims

10   upon the foregoing violations, which fail to state a claim.

11   The Unfair Competition Law ("UCL"), California Business and

12   Professions Code §§ 17200, *et seq.*, forbids acts of unfair

13   competition, which includes "any unlawful, unfair or fraudulent

14   business act or practice."  Cal. Bus. & Prof. Code § 17200.  "The

15   UCL is broad in scope, embracing anything that can properly be

16   called a business practice and that at the same time is forbidden

17   by law."  People ex rel. Gallegos v. Pacific Lumber Co., 158 Cal.

18   App. 4th 950, 959 (2008) (internal citations omitted).  Section

19   17200 "'borrows' violations of other laws and treats" them as

20   unlawful business practices "independently actionable under

21   section 17200."  Farmers Ins. Exch. V. Superior court, 2 Cal. 4th

22   377, 383 (1992).  Violation of almost any federal, state, or

23   local law may serve as the basis for a[n] [unfair competition]

24   claim."  Plascencia v. Lending 1st Mortg., 583 F. Supp. d 1090,

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

      [6]    Without citation to any factually analogous authority,
      plaintiff also argues that requiring her to post borrowed funds
27   would effectively preclude her from being able to move forward
      with seeking judicial review of defendants' conduct.  However,
28   not all of plaintiffs' claims require proof of ability to tender
      payment.

1098 (9th Cir. 2008) (citing <u>Suanders v. Superior Court</u>, 27 Cal.

App. 4th 832, 838-39 (1994)); <u>see</u> <u>Hauk v. JP Morgan Chase Bank</u>

<u>United States</u>, 552 F.3d 1114 (9th Cir. 2009) ("California's UCL

has a broad scope that allows for 'violations of other laws to be

treated as unfair competition that is independently actionable'

while also 'sweep[ing] within its scope acts and practices not

specifically proscribed by any other law.")

Because plaintiffs' UCL claim against moving defendants

American Servicing, MERS, and Loanstar is predicated on facts

supporting their other claims, all of which the court has

dismissed, the defendants' motions to dismiss plaintiffs' seventh

claim for relief for violations of California Business &

Professions Code § 17200 is GRANTED.  However, to the extent that

plaintiffs' UCL claims is premised on facts which support its

fraud claim, Meridias and Hicks' joint motion to dismiss

plaintiffs' seventh claim for relief is DENIED.

**K.   Motion For A More Definite Statement**

In the alternative, Meridias and Hicks request the court to

grant a motion for a more definite statement if the motion to

dismiss is denied.  The only claims that survive Meridias and

Hicks' motion to dismiss are the Sixth and Seventh claims for

relief.  As discussed above, in denying defendants' motion to

dismiss with respect to plaintiffs claims for fraud and

violations of California Business & Professions Code § 17200, *et*

*seq.*, the court finds that plaintiffs have alleged and pled facts

with sufficient particularity to provide Meridias and Hicks the

ability to frame a responsive pleading.  Accordingly, Meridias

and Hicks' motion for a more definite statement is DENIED.

**CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss plaintiffs' complaint are GRANTED in part and DENIED in part.

(1)   American Servicing's motion to dismiss is GRANTED.

(2)   Loanstar's motion to dismiss is GRANTED.

(3)   Meridias and Hicks' motion to dismiss the Fifth and Sixth claims is DENIED. The motion to dismiss all other claims against them is GRANTED. The motion for a more definite statement is DENIED.

Plaintiffs are granted fifteen (15) days from the date of this order to file an amended complaint in accordance with this order. Defendants are granted thirty (30) days from the date of service of plaintiffs' amended complaint to file a response thereto.


Dated: December 17, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE